**SO ORDERED.**

**SIGNED this 24 day of April, 2009.**



_____
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line use, but not for print publication

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**GEORGE MILAM HALL,**                    **CASE NO. 06-40872**
                                          **CHAPTER 12**
                **DEBTOR.**

**MEMORANDUM OPINION AND ORDER ON**
**MOTION FOR APPROVAL OF FEES AND EXPENSES OF DAVID R. KLAASSEN**

The matter before the Court is the Motion for Approval of Fees and Expenses of David

R. Klaassen (Doc.182), Debtor's former counsel, whose representation of Debtor was terminated

by Debtor in August 2008. Debtor, George Hall, objected to the amount of the fees (Doc.184).

An evidentiary hearing was commenced on January 15, 2009, and a second day of testimony was

held on February 26, 2009. David Klaassen appeared in person and by his counsel, Debra E.

James of Hampton & Royce, L.C. George Hall appeared pro se. The Chapter 12 Trustee, Eric

Rajala also appeared on January 15, 2009. There were no other appearances. The Court has jurisdiction.[1]

**BACKGROUND.**

This Chapter 12 case was filed on September 2, 2006. A motion to approve the employment of David Klaassen as counsel for the Debtor at the hourly rate of $150 plus expenses was also filed on September 2, 2006 and was granted by order filed on November 14, 2006. A proposed Chapter 12 plan was filed on March 2, 2007, at which time the fees were estimated to be in excess of $8,000 already incurred and $3,500 to finish confirmation and a pending objection to discharge.

After considerable disputes with secured creditors, primarily TeamBank, were resolved following mediation, the Debtor's Chapter 12 Plan as amended was confirmed on November 13, 2007. A status conference was held on June 23, 2008, at the request of the Chapter 12 Trustee because of developing problems between counsel and client which lead to numerous calls by Mr. Hall to the Trustee's office. At the hearing, Mr. Klaassen stated his desire to complete the case. One of the outstanding issues was Court approval of a settlement for $82,897 of a claim being pursued by the Debtor against Gehl Company, in which Debtor was represented by other counsel, Paul Hasty. During conversation between Mr. Klaassen and Mr. Hasty concerning the disposition of the settlement proceeds, including using them to pay Mr. Klaassen's fees, Mr.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for allowance of fees and expenses of Debtor's counsel is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

2

Klaassen told Mr. Hasty that there was a dispute between Debtor and Mr. Klaassen concerning the amount of Mr. Klaassen's fees, which were estimated by Mr. Klaassen to be between $40,000 to $50,000. After learning of this conversation, by letter dated August 14, 2008, Mr. Hall terminated Mr. Klaassen's representation.

On August 20, 2008, Mr. Klaassen filed a motion to withdraw and his motion for approval of fees and expenses in the amount of $45,105.50, consisting of $38,911.50 in fees and $6,194.00 in expenses.[2] The motion to withdraw was granted. The motion for approval of fees and expenses is supported by a detailed billing statement reflecting the work performed and time spent on each task.

Debtor objected to the fee motion, but neither the Chapter 12 Trustee nor any creditor objected. During the January hearing, Debtor did not question the agreement to pay Mr. Klaassen $150 per hour or that the work reflected on the billing statement was performed or the expenses incurred on his behalf. His objection was primarily that the total cost is too high - that the amount awarded should be significantly reduced. He based his objection on the facts that Mr. Klaassen in the confirmed plan represented that the total fees due were approximately $11,000; that Mr. Klaassen never communicated to Mr. Hall that the fees and expenses were significantly more than that representation; and given the amount of the Gehl settlement, he cannot fulfill his plan to pay the fees requested and at the same time renegotiate his debt with TeamBank to reduce his monthly payments to an amount he can afford.

During the February hearing, Mr. Hall's position, or the emphasis of his defense, changed. He then proceeded on a contract theory that the agreement for representation based

---

[2] Doc. 182.

3

upon an hourly rate and payment of expenses had been modified by the time the initial plan was filed, so that the contract was that he would pay a total fee of approximately $8,000 in excess of the retainer paid for representation in the Chapter 12 case, plus approximately $3,500 for representation in the adversary case, without regard to the time devoted to the representation.[3] Debtor also asserted that the fees for adversary case were excessive, that the charges for phone calls were in excess of the time devoted to such calls, and that there should have been no billing for attorney time for research requested by Mr. Hall.

**FINDINGS OF FACT.**

Mr. Klaassen has been engaged in the practice of law since 1983 and has been a sole practioner since 1996. Recently, as debtors' counsel, Mr. Klaassen has filed about thirty to sixty bankruptcy cases per year. He has appeared in numerous cases before this Court, and in those cases has competently and ethically represented his clients.

Mr. Hall, a Vietnam Veteran, although intelligent and knowledgeable about his case, is impaired because he suffers from post traumatic stress disorder, obsessive compulsive disorder, and attention deficient hyperactivity disorder.[4] During his numerous appearances before this Court, he has been courteous, but has often continued to follow his line of presentation or questioning even after directed by the Court to stop. His presentations are rambling and exhibit

---

[3] In a posttrial filing (Doc. 293), submitted without leave of Court, Debtor contends that agreement to compensate M. Klaassen at an hourly rate was modified to a flat fee agreement for representation for the total cost of $14,000. That amount is comprised of the initial $2,500 payment, an oral agreement on August 13, 2006 that the total cost would be $10,000, and a supplemental agreement that the representation in the adversary would increase the fees by $1,500. In the same pleading, Debtor drops his prior contention that the hourly rate was modified from $150 to $125.

[4] Exh. NN, p. 6. While no medical evidence was introduced concerning Mr. Hall's mental health status, he has repeatedly advised the Court that he has these disorders, and no one has disputed his assertions.

4

what the Court believes to be the symptoms of his illnesses. The exhibits provide examples of instances where he has in writing referred to an attorney involved in this case, to an appraiser, and to his adversaries using very inflammatory and derogatory adjectives.[5] Mr. Klaassen testified that these examples show the way that Mr. Hall talked to him. It is an understatement to observe that Mr. Hall was a very difficult client.

Mr. Klaassen records all time devoted to a case on a daily basis. He does not use an accounting system in which time is entered on a daily basis. Rather, his secretary transcribes the attorney records into detailed entries, which then can be tallied to create a billing statement. The entry for each day describes the separate tasks performed with the time devoted to each in units of .10 or .05 hours. Telephone calls are timed by his secretary and the time entered on the bill for the date of the call. Travel time is billed at half of the hourly rate. All case related expenditures are recorded as expenses, but overhead items, such as secretarial time, standard mailing expense, and routine copying costs, are absorbed by Mr. Klaassen as overhead and not billed to the client.

Before Mr. Klaassen undertook representation of Mr. Hall, Mr. Hall had filed a pro se Chapter 11 case, case no. 6-40585, pending before Judge Karlin. The United States Trustee because of dealings with Mr. Hall in the Chapter 11 case, suggested that counsel be retained. Mr. Hall contacted several attorneys, each of whom requested retainers of approximately $10,000 to undertake representation. Mr. Klaassen and Mr. Hall first conversed by telephone on July 5, 2006. Mr. Hall agreed to the representation at the rate of $150, with an initial payment of

---

[5] Exhs. DD and EE. See also Exh. KK (letter form Mr. Hall to Mr. Klaassen, dated Aug. 16, 2008, after the termination).

Case 06-40872    Doc# 302    Filed 04/24/09    Page 5 of 25

$2,500. Mr. Klaassen declined to represent Mr. Hall in pending state court litigation or in litigation against third parties, including Capital One Bank and the Gehl Company, but because of their impact on the Chapter 12 case, Mr. Klaassen was required to be informed about their status.

Mr. Klaassen's initial representation was devoted to review of the pending Chapter 11 case, evaluating Mr. Hall's situation, and concluding that dismissal of the Chapter 11 case and the filing of a new Chapter 12 case would be the best course of action. He then effected an orderly and nonprejudical conclusion and dismissal of the pending case. On July 28, 2006 a motion to dismiss was filed by Mr. Hall as the debtor-in-possession. On August 21, 2006, Mr. Klaassen filed a notice of appearance and request for notice, but was not appointed as counsel in the Chapter 11 case, which case was closed on September 6, 2006. Approximately 22 hours of time ($3,300 in fees) was devoted to matters relating to the pending case before August 30, 2006, after which time Mr. Klaassen's full attention was devoted to preparation of the Chapter 12 petition, schedules, and plan.

The Chapter 12 petition was filed on September 2, 2006. On the same day, application was made to employ Mr. Klaassen as attorney for the Debtor at the rate of $150 per hour.[6] Schedules were prepared. The Disclosure of Compensation of Attorney for Debtor(s) shows payment of $2,500 to Mr. Klaassen before filing of the Chapter 12 petition. Mr. Hall had represented to Mr. Klaassen that he had a good relationship with TeamBank, his primary secured creditor which held a claim for approximately $300,000, so Mr. Klaassen thought that plan drafting and confirmation would not be difficult. Although Mr. Hall informed Mr. Klaassen of

---

[6] Doc. 5. The application was approved. Doc. 36.

6

an substantial judgment held by Otto and Hurley entered against him in California, there was no

suggestion that it would be other than a routine claim.

However, Mr. Klaassen was soon contacted by counsel for Otto and Hurley advising that

there was a contention that the California judgment was nondischargeable.  Because Debtor

would not follow Mr. Klaassen's advice and agree to the extension of time to file[7] an adversary

complaint objecting to dischargeability of the claim, a dischargeability complaint, Case no. 06-

07111, was filed on December 11, 2006, and Mr. Klaassen early in the case was required to

commence defense of the complaint rather than to work with the claimant to resolve the dispute.

Mr. Klaassen and Mr. Hall worked together without serious acrimony to draft a proposed plan.

Between August 30, 2006 and March 2, 2007, Mr. Klaassen devoted 67 hours ($10,050.00 in

fees at $150 per hour) to representation of Debtor.  Therefore, as of the beginning of March, total

fees incurred were approximately $13,350.00, of which $2,500 had been paid prepetition,

leaving a balance owing of approximately $10,850.00, plus outstanding expenses of $1,559.07.[8]

Mr.  Hall's proposed Chapter 12 plan was filed on March 2, 2007.[9]  As to estimated

administrative expenses, the proposed plan stated:

> Estimate of Administrative Claims - in excess of $8,000.00
> consisting of the Debtor's attorney's fees and expenses already
> incurred plus an estimated $3,500.00 to finish confirmation and
> representation in the objection to discharge currently pending.

---

[7] The Court observes that numerous extensions of time are routinely granted in discharge situations
which frequently result in no discharge complaint being filed.  For Mr. Hall not to agree to an initial extension
in this case was highly unusual.

[8] The filing fee of $239 is not included, as this appears to have been paid by Mr. Hall.  Doc. 182.

[9] Doc. 57.

7

The $3,500 projection was based upon the fact the Mr. Hall was getting along with TeamBank, but on March 16, 2007, TeamBank objected to Debtor's lien avoidance motion which had been filed on February 14, 2007, seeking to avoid TeamBank's asserted liens in some of Debtor's exempt property.[10]

The proposed plan provides that it will be funded from Debtor's farming operation, his other businesses, and monies recovered in nine pending or potential claims against third parties, including a claim against the Gehl Company. The plan provides that any recovery by the Debtor from the claims to be asserted against third parties would be paid in accord with the following priorities: To the cost and expenses incurred in pursuing the claims; to the Debtor to the extent the recovery is exempt; to the payment of creditors holding secured claims in the proceeds; to the payment of administrative expenses (which include attorney fees); to the payment of unsecured claims; and to the Debtor.[11]

At least three entities objected to the plan: TeamBank (as to exemptions, lien avoidance, and valuation), Baldwin Bank (as to treatment of claim secured by a vehicle),[12] and Hurley and Otto (as to discharge of claim). Discovery was under taken with respect to the lien avoidance motion. An appraiser was retained. Amended schedules were filed. In June 2007, the parties agreed to mediate the lien avoidance and confirmation issues (other than dischargeability).[13] On

---

[10] Doc. 51.

[11] Doc. 57.

[12] Doc. 69.

[13] Doc. 109.

8

July 17, 2007, an agreed order resolving the objection of Baldwin State Bank was filed.[14]

Discovery continued between Debtor and TeamBank. On November 8, 2007, TeamBank and the

Debtor executed a settlement agreement[15], resolving the value of Debtor's real estate,

exemptions claimed by Mr. Hall, lien avoidance being sought by Mr. Hall, and objections to

confirmation of the plan. The parties agreed that TeamBank has $190,000 claim secured in full

by Debtor's real property and that the plan may provide that the following costs and expenses

may be paid from proceeds of Debtor's third party claims (his General Intangibles, including the

proceeds of the Gehl case, in which TeamBank claimed a lien) *prior* to any part of such recovery

being paid to TeamBank: Costs specifically incurred to recover on the General Intangible from

which recovery is achieved; fees and expenses of Debtor's counsel, Mr. Klaassen; and, if

subsequently agreed, released to Mr. Hall. The plan, as amended to reflect the settlement, was

approved by the Court.[16]

     Although between the date the proposed plan was filed, March 2, 2007, and plan

confirmation on November 13, 2007, Mr. Klaassen recorded 123 hours ($18,450) of time, the

confirmed plan made no change in the estimated amount of the administrative claim for payment

of Mr. Klaassen's fees. In addition to matters related to confirmation and lien avoidance in the

main case, the time entries reflect work on the pending dischargeability complaint and various

personal legal matters of the Debtor, such as veteran's administration appeal problems, post

---

[14] Doc. 123.

[15] Exh. 33.

[16] Doc. 139.

9

traumatic stress disorder, RICO, section 1983, false light and invasion of privacy, and a matter pending before the Natural Resources Conservation Service.

After confirmation, Mr. Klaassen continued to defend the dischargeability complaint. Discovery was conducted. After documents were obtained which indicated that the California judgment was not based upon fraud, Mr. Klaassen pursued settlement of the complaint and compromise of the claim for a nominal amount. Mr. Hall testified that the total fees relating to the adversary were $8,500. Mr. Klaassen prepared pleadings for Debtor to retain Karen McIlvain for purposes of the Natural Resources Conservation Service dispute and Mr. Hasty as counsel for the Gehl Company litigation.

The relationship between Mr. Hall and Mr. Klaassen was apparently harmonious until approximately August 2007. Thereafter, Mr. Klaassen refused to converse with Mr. Hall by telephone and the correspondence from Mr. Hall evidences his frustration with Mr. Klaassen. Nevertheless, at the same time Mr. Hall demanded that Mr. Klaassen complete the bankruptcy case. Because of growing rift between Mr. Klaassen and Mr. Hall, the Chapter 12 Trustee requested a status conference, which was held on June 23, 2008. The Trustee reported that Mr. Hall had begun to call the Trustee's office with his concerns about his case and the Trustee could not get him to stop. Mr. Hall's explanation of his problems with Mr. Klaassen focused upon his frustration regarding matters separate from the Chapter 12 case, for some of which special counsel had been appointed. Mr. Klaassen noted that he had not agreed to represent Mr. Hall in the matters about which he was concerned and that Mr. Hall had declined to sign discovery responses that were due in the adversary proceeding. Mr. Klaassen stated that he was sympathetic to Mr. Hall and wished to finish the case, although he was a bit burned out dealing

10

with all of Mr. Hall's phone calls. Mr. Hall reported that he had been orally informed that the Gehl matter could be settled for $83,000. The Court observed that what was needed was for Mr. Hall and Mr. Klaassen to cooperate sufficiently to finish the case.

At trial on the motion for fees and expenses, Mr. Klaassen testified that he had several reasons for not withdrawing despite his difficulties with Mr. Hall. Before he took the case, Mr. Klaassen knew that Mr. Hall would be difficult. If he needed to withdraw, Mr. Klaassen wanted to time the withdrawal to do the least harm to Mr. Hall, who Mr. Klaassen feared could not successfully complete his Chapter 12 case if unrepresented. Mr. Hall had strenuously opposed Mr. Klaassen's withdrawal, not withstanding the developing acrimony between attorney and client. Mr. Hall testified that he had decided that he would require Mr. Klaassen to continue the representation to the end of the case. By June, 2008, the case was very close to completion, and if the dischargeability complaint was settled to Mr. Hall's advantage,[17] Mr. Klaassen thought Mr. Hall would be left in a good situation.

After the June, 2008, status conference, Mr. Klaassen drafted pleadings for the appointment of Mr. Hasty as counsel for the Debtor to pursue the Gehl matter. Mr. Hall informed Mr. Klaassen that he was unable to make his June payment to TeamBank, and would not be able to do so until the Gehl settlement funds became available. Mr. Klaassen negotiated with the bank to obtain an extension of time for the payments. Negotiations concerning the disposition of the proceeds of the settlement in accord with the Chapter 12 plan were commenced. Mr. Klaassen sent an exploratory letter to counsel for TeamBank, which claimed a

---

[17] That complaint was dismissed with prejudice on October 3, 2008. Case no. 6-7111, Doc. 52.

perfected security interest in the proceeds, and advised Mr. Hasty that there was a dispute between Mr. Klaassen and Mr. Hall regarding his total fees of between $40,000 and $50,000.

Mr. Klaassen's last time entry is for August 11, 2008. On August 14, 2008, Mr. Hall sent a letter to Mr. Klaassen terminating representation.[18] In the letter, he accused Mr. Klaassen of betrayal of trust when stating to Mr. Hasty that there was a fee dispute between Mr. Klaassen and Mr. Hall; demanded that Mr. Klaassen write to Paul Hasty denying that there was a fee dispute; demanded return of the original of his file; and accused Mr. Klaassen of milking and nursing the Otto matter, of blackmailing him now that the Gehl settlement had been reached, and of playing to his emotional illnesses. In conclusion he demanded that Mr. Klaassen "stay the hell out of my life" and stated, "Dave you are arrogant, efete, aloof snob, an ego maniac. Don't you think it is hard enough for a person like me to get an attorney in the first place?" Thereafter, Mr. Klaassen turned over his file to Mr. Hall and filed a motion to withdraw, which was approved. After confirmation and before termination, Mr. Klaassen recorded 48 hours of time ($7,200.00), approximately 19 hours of which was entered on dates when he traveled to Topeka for hearings in the main case or the adversary case. Mr. Klaassen's motion for approval of his fees was filed on August 20, 2008.

There is no contract of employment of Mr. Klaassen by Mr. Hall other than the Application for Order Approving Employment of Counsel, signed by Mr. Hall and filed on September 2, 2006.[19] It provides for representation "at an hourly rate of $150.00, plus expenses." As will be discussed below, Mr. Klaassen states this agreement was never amended,

---

[18] Exh. NN.

[19] Doc. 5.

but Debtor claims amendment based upon the liquidation analysis included in a draft plan which was never filed and the plan filed on March 2, 2007. In December, 2006, before the adversary case was filed, Mr. Klaassen prepared a proposed plan, which was never filed, but includes a liquidation analysis,[20] stating that administrative expenses include fees and expenses in the amount of $8000 "plus estimated $2,000 to finish confirmation." The proposed plan, filed March 2, 2007,[21] after the filing of the adversary complaint, in the liquidation analysis includes as an estimate of administrative claims, "in excess of $8,000.00 consisting of the Debtor's attorney's fees and expenses already incurred plus an estimated $3,500.00 to finish confirmation and representation in the objection to discharge currently pending." There is no correspondence from Mr. Klaassen to Mr. Hall regarding the amount of fees. Although Mr. Hall contends that he repeatedly requested information from Mr. Klaassen regarding the fees, he offered no particular exhibit containing such a request. Mr. Hall and Mr. Klaassen agree that the amount of fees was discussed at the mediation, but although Mr. Klaassen testified that the amount of $20,000 was stated, Mr. Hall disputes this fact.

After termination of the representation, the distribution of the Gehl settlement proceeds, which under the settlement agreement with TeamBank and the confirmed plan, were to be devoted in part to the payment of Mr. Klaassen's fees, became an important issue. Mr. Hasty, although not entering an appearance in this case, attempted on Debtor's behalf to negotiate with Mr. Klaassen regarding the amount of his fees.[22] Mr. Hall moved the Court to approve

---

[20] Exh. 13, p. 8.

[21] Doc. 57.

[22] Exhs. PP, QQ, SS, TT, and UU.

distribution of the Gehl settlement as follows: That $3,500 be paid to his counsel in the Gehl matter, Paul Hasty; that $10,000 be paid to Mr. Klaassen in partial payment of his fees; that $10,000 be paid to Mr. Hall; and $59,397 be paid to TeamBank in consideration of refinancing Debtor's mortgage at a lower rate.[23]  The only terms Mr. Klaassen was willing to accept were the following: Mr. Hall would withdraw his objection to Mr. Klaassen's motion for approval of fees and expenses; payment of $25,000 from the Gehhl settlement; and release of any and all claims of Mr. Hall and his mother, Mary Hall, against Mr. Klaassen.[24]  These terms were rejected by Mr.  Hall and then withdrawn by Mr. Klaassen.

Throughout the representation, Mr. Klaassen, was in frequent contact with Mr. Hall.  He mailed Mr. Hall copies of correspondence and pleadings.  Mr. Klaassen personally met with Mr. Hall several times, including once in Emporia, and they discussed the case numerous times in conjunction with court hearings.  Mr. Klaassen's detailed billing statement includes 106 phone calls, 27 of which lasted between one hour and 150 minutes.[25]  For the most part, these calls were one sided with Mr. Hall doing most of the talking about matters not directly related to the bankruptcy and provided little opportunity for Mr. Klaassen to state his concerns and recommendations.  From January through June 2008, Mr. Klaassen adopted a policy of not communicating with Mr. Hall by phone, finding it more effective to send letters and copies of correspondence from third parties.

---

[23] Doc. 190.  There were objections to the motion, which remains pending before the Court.

[24] Exh. SS.

[25] According to Mr. Klaassen, as stated in a posttrial brief (Doc. 295), the calls total approximately 72 hours, or 28 percent of the total time Mr. Klaassen billed in the case.

14

Mr. Klaassen at all times made clear to Mr. Hall that the representation was limited to the Chapter 12 case, meaning filing of the Chapter 12 case and completion of the Chapter 12 case and one related adversary proceeding, between Otto and Hurly, but excluding other adversary cases and Debtor's potential claims against Gehl. From time to time, in response to Mr. Hall's often demanding and pleading requests, Mr. Klaassen did discuss and provide legal research and assistance with other matters. For example, in February 2007, he conducted research and had a telephone conference with Mr. Hall concerning his claims against the veteran's administration, and several times in October and November 2007 he provided Debtor with requested legal research. Mr. Klaassen provided legal assistance to Mr. Hall's mother, Mary Hall, to amend her trust and transfer assets to the trust, but he did not bill for these services.

Mr. Klaassen did not send Mr. Hall periodic billing statements. There was no credible evidence that during the representation the amount of the fees and expenses were a subject of conversation between Mr. Klaassen and Mr. Hall, except the matter was raised during plan mediation. It is Mr. Klaassen's practice to send periodic statements to Chapter 12 clients when the attorney fees are being paid by a third party, such as a relative, or a third party is financing the fees. When a debtor has limited funds, Mr. Klaassen often does not prepare a billing statement until confirmation, completion of the plan, or the end of the case. In Chapter 12 cases, Mr. Klaassen is concerned that monthly statements would scare the client and, if there is a breach of confidentiality and creditors learn of the fees, the amount of fees could be used as ammunition in plan negotiations. Although it is Mr. Klaassen's practice to record all time and expenses, he frequently reduces his fees to get a debtor through a case. In effect, Mr. Klaassen routinely finances debtors who usually do not have sufficient money to both fund a plan and pay

15

Mr. Klaassen' fees in full.  In this case two unusual things happened, Mr. Klaassen and Mr. Hall became disenchanted with each other and a source of money from which to pay Mr. Klaassen's fee in full materialized.  Nevertheless, Mr. Klaassen contemplated reducing his fee for Mr. Hall. Even after Mr. Hall's termination of the representation, Mr. Klaassen offered to accept less than all of his fees and expenses, if accompanied by a settlement of all issues with Mr. Hall, including his threats of legal malpractice litigation.

**ANALYSIS.**

The award of fees to Debtor's counsel is governed by § 330.[26]  "That provision covers both the court's ability to declare a fee unreasonable and to independently determine reasonable fees."[27]  It states in relevant part:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . .the court may award to a . . . professional person employed under section 327 or 1103--
>
> > (A) reasonable compensation for actual, necessary services rendered . . . ; and
>
> > (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of . . . any . . . party in interest, award compensation that is less than the amount of compensation that is requested.
>
> (3) In determining the amount of reasonable compensation to be awarded . . ., the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

---

[26] 11 U.S.C. § 330.  In the text, sections of Title 11 are referred to by section number only.

[27] *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Financial Serv., Inc.)*, 427 F.3d 804, 810 (10th Cir. 2005).

16

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

In contrast to cases under Chapters 7 and 11, in a Chapter 12 case in which the debtor is an individual there is no requirement that the services benefit the estate. Rather, § 330(a)(4)(B) provides "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case."

In the Tenth Circuit, the "adjusted lodestar analysis" is used to "determine the reasonableness of a requested professional fee within the context of § 330."[28] This analysis in addition to the statutory factors, takes into account the factors articulated in *Highway Express*,[29] identified by the Tenth Circuit to include "the novelty and difficulty of the task, the requisite skill

---

[28] *In re Commercial Financial Serv., Inc.*, 427 F.3d at 811.

[29] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

17

level, whether the case precluded other employment, the contingent nature of the fee, time limitations, the amount of money involved and results obtained, and the experience, reputation, and ability" of the attorney.[30]  The fees awarded may be for services provided both prepetition and postpetition.[31]  The person requesting the fees, in this case Mr. Klaassen, has the burden to prove the requested fees and expenses are reasonable.[32]

The Court's analysis is "effectively broken down into three stages of inquiry: (1) is the billed service compensable; (2) was the service actual and necessary; and (3) is the billed amount reasonable considering the nature, extent and value of the of such services."[33]  The Court when making this analysis in this case starts with the detailed billing statement submitted by Mr. Klaassen and his testimony further explaining the services provided.  Given the fact that for Chapter 12 cases, § 330 allows the court to award fees for work representing both the interests of the Chapter 12 estate and of Mr. Hall in connection with the case, the Court finds that all of the services for which Mr. Klaassen seeks payment are compensable under the Code.  Mr. Hall does not contend that there are entries for representation outside of this criteria.  The Court's independent review of the application confirms this position.[34]  There are no entries for services which are secretarial in nature or costs that should be included in overhead.

---

[30] *In re Commercial Financial Serv., Inc.*, 427 F.3d at 811.

[31] *In re Busetta-Silvia*, 314 B.R. 218 (10th Cir. BAP 2004).

[32] *In re Commercial Financial Serv., Inc.,* 427 F.3d at 811.

[33] *In re Cascade Oil Co., Inc.*, 126 B.R. 99, 103 (D. Kan. 1991).

[34] The Court notes that Mr. Klaassen testified that he provided services to Mr. Hall's mother with respect to her trust, but there are no time entries for this representation.  Although these services were related to Mr. Hall's bankruptcy in that they undertook to assure that trust property would not be property of the estate, because the direct beneficiary was Mary Hall, they may be outside the scope of compensable services as defined by § 330.

18

The second inquiry is whether the services were actual and necessary. First, this factor requires the Court to determine if the services were actually rendered as represented in the application. At the first hearing, Mr. Hall did not contend that the services were not provided. At the second hearing, Mr. Hall presented an analysis of his phone records for the period July 9, 2007 through August 14, 2008 from which he concluded that Mr. Klaassen had overcharged $1492 for phone calls, the length of which were shorter than the billed amount or where there was a time entry but no call shown to have originated by Mr. Hall from the phone numbers whose records he obtained. This assertion of overcharge suffers from several flaws from which the Court finds the contention not credible. First, Mr. Hall examined only the time recorded by Mr. Klaassen when the call was initiated by Mr. Hall. Although there is testimony that the usual practice was for Mr. Klaassen to request Mr. Hall to call him, there is no testimony that this was the exclusive means of phone communication. Mr. Hall did not request Mr. Klaassen's phone records to determine if calls were placed by Mr. Klaassen.[35] Second, review of the amount billed for phone calls omits all calls for dates when Mr. Klaassen did not record a time entry, even though there were numerous such calls by Mr. Hall.[36] Neither the fee application nor the testimony provides the Court with any reason to question whether the services were provided.

---

[35] In a posttrial brief, Mr. Klaassen contends that for the period July 9, 2007 and ending August 14, 2008, his phone bills include 22 charges for calls from Mr. Klaassen to Debtor for a total of 345.04 minutes. Mr. Klaassen also contends he charged Debtor for only 77 percent of the total time shown on both Debtor's and Mr. Klaassen's phone records for the period of July 9, 2007 to August 14, 2008. Doc. 295.

[36] Mr. Hall justified not including these calls by the assertion that he frequently called Mr. Klaassen's office and spoke only with his secretary, but of course there is no way to know if some of these calls involved speaking with Mr. Klaassen but the time not recorded.

19

The requirement that the services billed were necessary relates to the statutory requirement that compensation should not be allowed for unnecessary duplication of services.[37] Here, since Mr. Klaassen is a sole practioner with no attorney or paralegal staff, there is no possibility of duplicate services being provided by two attorneys or improper billing for inter office conferences. The Court's review of the billing statement does not locate entries where Mr. Klaassen billed twice for the same service. Mr. Hall objected to the billing for Mr. Klaassen's appearance at the June 23, 2008 hearing, since Mr. Hall requested Mr. Klaassen not to appear. Since the motion for the hearing was filed by the Chapter 12 Trustee, Mr. Klaassen was required to attend, and the billing is appropriate. Mr. Hall also objected to some time entries for work in obtaining full records of the California case which was the basis for the objection to discharge, contending that he had provided Mr. Klaassen with all necessary court records. The Court finds credible Mr. Klaassen's testimony that Mr. Hall's documents were incomplete and further inquiry was necessary.

The third inquiry is the heart of the matter - whether the billed amount is reasonable considering the nature, extent, and value of the services provided. The first statutory factor is the amount of time spent on the services. Although as a first impression the total time spent (259.41 hours) appears excessive, further examination of the billing statement convinces the Court that the amount of time is reasonable. As stated above, approximately 22 hours were devoted to an orderly, nonprejudicial dismissal of the Chapter 11 case, an estimated 73.25 hours[38] were devoted

---

[37] 11 U.S.C. § 330(a)(4)(A)(i).

[38] If one estimates that the average length of the 27 long calls was 1.25 hours and the remaining 79 calls averaged .5 hours, 73.25 hours were devoted to phone calls with Mr. Hall. In a posttrial brief, Mr. Klaassen contends the total is 72.43 hours. Doc. 295.

20

to phone conferences with Mr. Hall, and considerable time was devoted to Mr. Hall's personal matters which related to the Chapter 12 case but were not expressly within the limited scope of Mr. Klaassen's Chapter 12 representation. As to services which may not be required in every Chapter 12 case, Mr. Klaassen spent considerable time successfully defending a dischargeability complaint, avoiding liens in exempt assets, and negotiating the terms of the Chapter 12 plan with TeamBank. While Mr. Klaassen was counsel, this was not a simple Chapter 12 case.

The hourly rate is reasonable. In some cases there is question about the hourly rate, but this is not a problem here. Mr. Klaassen is experienced and well qualified to represent debtors in Chapter 12 cases. His rate of $150 per hour is approved as reasonable based upon the Court's knowledge regarding customary fees of local bankruptcy counsel. The Court rejects Mr. Hall's contention that the initial fee agreement was amended to a flat fee agreement for $14,000 or any other such amount. It is obvious that the estimates of fees included in the original plan, the Liquidation Analysis, and the amended plan were, as stated in those documents, simply estimates of fees included for purposes related to the future bankruptcy proceedings and were not amendments of the fee agreement with Mr. Hall.

Based upon a review of the billing statement and the testimony, the Court finds the services rendered in the Chapter 12 case were necessary and beneficial to the completion of the case. There is no suggestion of pursuing irrelevant or frivolous matters. The services rendered on behalf of Mr. Hall personally were in response to his inquiries, and at times his demands, that the research be undertaken.

The services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed. Mr. Hall did not

21

challenge any individual entries, other than the phone conferences and investigation in the adversary case, discussed above and rejected as improperly billed. The Court's own review of the time entries satisfies the Court that the time devoted to each task was reasonable.

Mr. Klaassen has demonstrated skill and experience in the bankruptcy filed, both in this and other cases before the Court. The compensation requested is reasonable, or perhaps low, based upon what this Court understands is customarily charged by comparably skilled attorneys in cases other than under Title 11.

The Tenth Circuit has directed the Court to consider the *Johnson* factors, in addition to the factors enumerated in § 330(a)(3). None of these factors support a decrease in the fees. Mr. Hall's personal situation presented made Mr. Klaassen's task novel and difficult. Mr. Klaassen had the requisite skill to represent Mr. Hall in this proceeding and achieved the favorable outcome of a confirmed plan and nearly completed negotiation of a favorable settlement of the adversary proceeding. As stated previously, Mr. Klaassen's has a good reputation as Chapter 12 counsel. Having considered these factors, which to a large extent duplicate that established by statute, the Court finds no basis to reduce the compensation from that requested.

Mr. Hall's objection to the fees and expenses is based primarily upon his surprise as to the amount which Mr. Klaassen claimed was due when Mr. Klaassen conversed with Mr. Hasty regarding the disposition of the Gehl settlement proceeds. According to Mr. Hall, Mr. Klaassen never advised him of the amount of the fees and expenses on an ongoing basis and the fees awarded should be limited to the amount communicated to him as stated in the Chapter 12 plan, approximately $11,000, since this was the amount represented to be paid through the plan, or to $14,000, based upon an amended contract theory.

22

Mr. Hall's version of the facts regarding communication about the fees is not controverted by Mr. Klaassen, except with respect to the mediation. Mr. Klaassen, apparently consistent with his general practice in Chapter 12 cases when the fees are to be paid through the plan, did not send Mr. Hall any billing statements during the pendency of the case. The only time the parties agree that Mr. Klaassen orally discussed fees with Mr. Hall was at the mediation, but the parties disagree whether the estimate of $20,000 was stated. Mr. Klaassen also states he discussed the amount of fees with Mr. Hall during his long meeting with him following the June 23, 2008 hearing, but Mr. Hall denies this assertion. The Court understands Mr. Klaassen's rationale - that to bill debtors during the case can have a chilling effect on the representation, particularly when counsel, such as Mr. Klaassen in this case, expects to reduce the fees to accommodate the debtor's ability to pay. Nevertheless, the Court does not condone this practice. Regular billing statements should be sent to keep the client appraised of the total potential cost of the representation.[39] Under the circumstances of this case, the Court declines to reduce the requested fee award because of Mr. Klaassen's conduct. It is abundantly clear that Mr. Klaassen agreed to represent Mr. Hall based upon an hourly rate of $150 per hour, plus expenses and that agreement was never amended to a flat fee of $11,000, $14,000, or some other amount. The failure to keep Mr. Hall advised of the mounting expense caused no prejudice to Mr. Hall and actually may have facilitated continuation of the attorney client relationship.

The question in the Court's mind is whether Mr. Klaassen should be held to his own practice in previous cases, where as far as the Court knows, Mr. Klaassen has never expected to

---

[39] In Chapter 11 and 12 cases, the local rules permit, but do not require, applications for interim compensation for attorneys employed under 11 U.S.C. § 327. LBR 2016.1

receive one hundred percent of his fees and expenses. Because in at least two respects this is an unusual case, the Court is convinced that it should not attempt to apply the equitable adjustment to the fees and expenses routinely utilized by Mr. Klaassen. First, Debtor has several third party claims which provide a possible source of funds to pay the fees, and Mr. Hall, Mr. Klaassen, and the secured creditor claiming an interest in the proceeds of the claim agreed that Mr. Klaassen's fees would be paid before the secured creditor and before Mr. Hall. This indicates to the Court that Mr. Klaassen was actively attempting to protect his right to payment and, if the recoveries on third party claims were sufficient, believed it would be possible to be paid all of his fees and expenses in this unique case. Second, in this case Mr. Hall terminated the representation and would not agree to compromise the fees. Mr. Klaassen has been forced to resort to litigation, for which he is not requesting an additional fee award, even though he has retained counsel and participated in a two day trial. The Court agrees with Mr. Klaassen's position that his requested fees and expenses are reasonable and comply with the applicable legal standards. Court approval of the amount requested will not preclude Mr. Klaassen in subsequent negotiations regarding an amended plan or when attempting to collect the approved fees, from agreeing to an adjustment, if he believes it is appropriate. In the present context, to adjust the fees and expenses downward simply because Mr. Klaassen routinely does so would amount to a Court penalty for the practice of fee adjustment, a practice which should be encouraged and remain under the control of counsel.

For the foregoing reasons, the Court approves Mr. Klaassen's application for fees and expenses and holds that he is entitled to fees in the amount of $38,911.50 and expenses of $6,194, with credit of $2,739.00 already paid. The extent to which the fees and expenses must be paid

Case 06-40872    Doc# 302    Filed 04/24/09    Page 24 of 25

from the Gehl settlement in accord with the priorities previously agreed to was not before the Court in this proceeding and no ruling is made about this question.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**###**

Case 06-40872    Doc# 302    Filed 04/24/09    Page 25 of 25