**SO ORDERED.**

**SIGNED this 28 day of April, 2010.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line use but not for print publication.
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**GEORGE MILAM HALL,**                                    **CASE NO. 06-40872**
                                                          **CHAPTER 12**
                               **DEBTOR.**

**MEMORANDUM OPINION FOLLOWING TRIAL**
**ON DEBTOR'S MOTIONS FILED AS DOCUMENTS 190, 209, 221, AND 360**

On December 1 and 2, 2009, trial was held on the issues raised by Debtor's motions filed

as Documents 190, 209, 221, and 360 and the responses of the parties to those motions. The

issues are varied, including the binding effect of a settlement agreement, the enforceability of the

confirmed Chapter 12 plan, Debtor's attempt to amend the confirmed plan, and the distribution

of proceeds from the settlement of prepetition litigation regarding Debtor's purchase of defective

equipment. Debtor appeared _pro se_. Patricia J. Reeder of Woner, Glenn appeared for Great

Southern Bank (GSB), the successor to TeamBank. Debra E. James of Hampton & Royce

appeared for David R. Klaassen, who was also present.  Eric C. Rajala, the Chapter 12 Trustee, appeared in person.  There were no other appearances.  After the filing of written closing arguments and responses, the Court took the matter under advisement.  The Court has jurisdiction.[1]

## I. BACKGROUND FACTS AND ISSUES TRIED.

This is a Chapter 12 case in which a plan was confirmed while Debtor was represented by attorney David R. Klaassen.  Property of the estate includes Debtor's potential recovery on a prepetition claim against Gehl Company and others.  The confirmed plan, which incorporates the terms of a settlement agreement between the Debtor and his primary secured creditor, TeamBank, provides the proceeds of the Gehl claim, in which TeamBank claims a perfected security interest, shall be distributed first to pay the costs of recovery from Gehl, second to the payment of Mr. Klaassen's fees and expenses, and third to the payment of TeamBank's secured claim.  Subsequent to confirmation, the anticipated settlement of the Gehl claim was finalized.  After Debtor was not able to timely make payments required by the plan and gain access to the proceeds of Gehl settlement, Debtor became dissatisfied with the distribution of the proceeds of the Gehl settlement as provided in the confirmed plan, primarily because of the priority given to

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).  There is no objection to venue or jurisdiction over the parties.

2

the payment of Mr. Klaassen's fees. This led to Debtor's termination of his representation by Mr. Klaassen. Since then, Debtor has appeared *pro se*.[2]

Debtor objected to Mr. Klaassen's motion for approval of fees and expenses, which was decided adversely to Debtor in a judgment[3] entered following a two day trial held in January and February, 2009. Since then Debtor has filed numerous motions based upon his disenchantment with the confirmed plan as it relates to the Gehl settlement, the settlement agreement with TeamBank, and the award of fees and expenses to Mr. Klaassen.

As stated in the Final Pretrial Order, the issues tried were:[4] Issue (1) - the rights of all parties, other than Paul Hasty, to the proceeds of the Gehl settlement (Documents 190, 209, and 221); Issue (2) - Debtor's motion to set aside the settlement agreement between Debtor-in-Possession and TeamBank dated November 8, 2007 (Document 360); and Issue (4) - any issues in addition to Issues 1 and 2 above (other than the amount of fees and expenses awarded to David Klaassen) raised in Debtor's motions to allow the filing of a modification of his

---

[2] In his written submissions, Debtor repeatedly asserts that as Debtor-in-Possession he has been a faithful fiduciary. E.g, Doc. 531-5, p. 60. The record refutes that contention. At trial, the Court learned that during the pendency of this case Debtor settled a prepetition civil rights claim which he filed in Franklin County District Court without approval of the Court. He admits to having used the proceeds for his personal expenses. Monthly reports have not been filed.

[3] Doc. 303; see Memorandum Opinion and Order, Doc. 301.

[4] Doc. 468. The Final Pretrial Order set the framework for ruling on all issues raised by Debtor's pleadings filed as Documents 190, 209, 221, 309, 356, and 360. Because generally each document raises several issues and few of the issues are raised in only one pleading, the Final Pretrial Order is organized by issue rather than by pleading. Likewise, this memorandum will address issues rather that specific motions or objections.

confirmed Chapter 12 plan (Documents 209, 221, and 360). The Final Pretrial Order identified two additional issues (Issues 3 and 5), trial of which were continued.[5]

The foregoing three issues are interrelated. To facilitate analysis, rather than addressing them in numerical order, the Court will first address Issue 2, the question of whether the settlement agreement with TeamBank should be set aside. Next, the Court will address Issue 4, related to the validity of the confirmed plan. Finally, the court will address Issue 1, the distribution of the Gehl proceeds.

## II. FINDINGS OF FACT.

### A. The plan confirmation process and the November 8, 2007 Settlement Agreement.

Mr. Hall's proposed Chapter 12 plan was filed on March 2, 2007.[6] The proposed plan was noticed and an opportunity for hearing given. Three creditors objected to the plan: TeamBank (the primary secured creditor who objected as to exemptions, lien avoidance, and valuation of collateral), Baldwin Bank (a secured creditor who objected to treatment of its claim secured by a vehicle),[7] and Hurley and Oddo (unsecured creditors holding approximately 78% of all unsecured claims, as to discharge of their claim), thereby initiating a contested matter. The confirmation hearing was held on April 6, 2007.[8] No ruling was made, and the Court directed the parties to file a Rule 26(f) report. A planning meeting was held on April 11, 2007

---

[5] These were Issue 3, Debtor's motion under Bankruptcy Rule 9024 for relief from the judgment regarding Mr. Klaassen's fees (Document 309), and Issue 5, Debtor's motion for rehearing of the findings of July 27, 2009, as stated in the Order of July 31, 2009 (Document 356).

[6] Doc. 57.

[7] Doc. 69.

[8] Debtor's motion to avoid lien was also heard on April 6, 2007. Mr. Klaassen requested that the motion stay on the same track as the confirmation issues.

concerning the objections to confirmation and Mr. Hall's motion for lien avoidance. A Rule 26(f) report was filed on April 12, 2007[9] and adopted by the Court.[10] Discovery was under taken with respect to the lien avoidance motion and confirmation. An appraiser was retained. Amended schedules were filed.

An evidentiary hearing was scheduled for June 21, 2007. On the joint oral motion of the parties, the trial was continued, since the parties had agreed to mediate the lien avoidance and confirmation issues (other than dischargeability).[11] On July 17, 2007, an agreed order resolving the objection of Baldwin State Bank was filed.[12] Discovery continued between Debtor and TeamBank. On November 8, 2007, TeamBank and the Debtor executed a Settlement Agreement (hereafter "Settlement Agreement"),[13] resolving the value of Debtor's real estate (TeamBank's primary collateral), exemptions claimed by Mr. Hall, lien avoidance being sought by Mr. Hall, and TeamBank's objections to confirmation of the plan. The parties agreed that TeamBank has a claim of $190,000, thereby reducing the bank's secured claim as stated in its proofs of claim by $82,050.54. It was agreed that $190,000 claim is secured in full by Debtor's real and personal property, including the proceeds from seven claims of Debtor against third parties including Gehl. The Settlement Agreement provides that the confirmed plan shall provide the following costs and expenses may be paid from proceeds of Debtor's third party claims (his General

---

[9] Doc. 74.

[10] Doc. 75.

[11] Doc. 109.

[12] Doc. 123.

[13] GSB Exh. C.

5

Intangibles, including the proceeds of the Gehl case, in which the parties agreed that TeamBank had a perfected lien) *prior* to any part of such recovery being paid to TeamBank: Costs specifically incurred to recover on the General Intangible from which recovery is achieved; fees and expenses of Debtor's counsel, Mr. Klaassen; and payment to Mr. Hall, to the extent that TeamBank and Mr. Hall subsequently agreed.

Simultaneously with the drafting of the Settlement Agreement, an agreed order amending and confirming Debtor's Chapter 12 plan dated March 2, 2007 and resolving all the remaining issues currently pending between Debtor, TeamBank, and Oddo & Hurley was prepared. It incorporated the terms of the Settlement Agreement. On November 13, 2007, the Court approved the order which had been approved by the Chapter 12 Trustee and counsel for Debtor, TeamBank, and Oddo & Hurley, the two major unsecured creditors who had objected to confirmation.[14] The distribution of the proceeds of the settlement of Debtor's claim against Gehl, is addressed in Class 7.[15] It provides for the distribution of any recovery in the following priority: First, to the payment of Debtor's portion of all costs and expenses specifically incurred with regard to enforcing and/or prosecuting such claim; Second to the Debtor with regard to any portion that is lawfully exempt and unencumbered; Third to the payment of any then fees and expenses owed to David R. Klaassen as an unsecured administrative claim under class 2 of the plan; and Fourth to the payment of any unpaid secured claims of TeamBank "which are secured by a duly perfected lien in or upon such recovery,"[16] provided that TeamBank and Mr. Hall

---

[14] Doc. 139.

[15] *Id.*, at p. 26.

[16] *Id.*

could agree to release such funds to Mr. Hall without need for plan amendment. The March 2, 2007 plan, as amended by the confirmation order entered on November 13, 2007 is hereafter referred to as the "Confirmed Plan."

### B. The Gehl claim and its settlement.

The Gehl claim was asserted by Mr. Hall for damages alleged to have been arisen out of the Debtor's purchase for approximately $60,000 of a Gehl skid loader and attachments in August 2002. The purchase was financed by TeamBank, and the loan was secured by a purchase money perfected security interest in the loader and attachments. The bank's security agreement described its collateral in part as follows:

> All inventory, equipment, accounts (including but not limited to all healthcare insurance receivables), chattel paper, instruments (including but not limited to all promissory notes); letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other right to payment and performance and general intangibles (including but not limited to all software and all payment intangibles); . . . , all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; . . . and all products and proceeds . . . of or relating to the foregoing property, including but not limited to a . . . Gehl 7800 skid loader; . . ..

The security interest was perfected.

In 2006, Debtor *pro se* filed suit in the District Court of Marshall County, Kansas against Bill Gehl, the Gehl Company, Bruna Brothers, and others.[17] It was alleged that the loader was

---

[17] Trustee's Exhibit A is a copy of a petition filed in Miami County District Court on August 22, 2005 by Mr. Hall, pro se, against Bill Gehl, the Gehl Company, Bruna Implement, and others. At trial Trustee Exhibit A was represented to be a copy of the petition which was the subject of the Motion to Approve Settlement, filed as Document 185 on September 4, 2008. See Doc. 509, Partial Transcript, of Proceedings, December 2, 2009, pp. 1-2. However, the Release of Claims and Settlement Agreement, attached as exhibit A to that motion (Trustee Exhibit E), addresses the settlement of Marshall County

defective, was inoperable, and could not be repaired. Eleven counts are alleged. They include: Breach of contract; negligent misrepresentation; equitable estoppel, promissory estoppel, forbearance, waiver; tortious interference with contract; willful misrepresentation of a material fact; misrepresentation in an action for the deceptive act and practice; fraud; violation of the Kansas Consumer Protection Act; and rescission and specific performance. The Petition prayed for the same damages under each count, as follows: $25,200 for thee years of principal and interest on Debtor's farm loan with TeamBank; at least $50,000 for loss of use of the loader; $60,000 cost of the loader; $2000 for each violation of the Kansas Consumer Protection Act; and other damages in excess of $75,000.[18]

On December 27, 2007, Hall retained Paul Hasty as counsel for the Gehl litigation and another claim which Mr. Hall had filed against Capitol One. Mr. Hasty continued the settlement negotiations with Gehl which Mr. Hall had been pursuing. The Debtor agreed with the Gehl defendants to settle for payment of $82,897.00 and return of the loader and Gehl equipment. At the June 23, 2008 status conference, Mr. Hall reported that the Gehl claim was close to being settled. Mr. Klaassen then learned for the first time of the identity of Mr. Hasty, contacted him, and prepared pleadings to appoint Mr. Hasty as counsel for the Debtor to pursue the Gehl issues. On October 10, 2008, the Court approved the proposed settlement with the Gehl defendants. There was no allocation of the settlement among the eleven counts. As to the nature of the case,

---

District Court, case no. 2006-CV-06, against the same defendants as named in the Miami County District Court petition admitted as Trustee Exhibit A. Since there was no objection to the admission of Trustee's Exhibit A and at trial it was assumed that the allegations which were settled were those asserted in Trustee Exhibit A, the Court assumes that the petition in Marshall County District Court, case no. 2006-CV-06 was, with respect to the issues before the Court in this trial, identical to the petition filed in Miami County District Court on August 22, 2005.

[18] Trustee Exh. A.

Mr. Hasty testified he saw it as a case with "nothing to it other than a contract, breach of contract warranty. I thought the rest of it was just all garbage."[19] Since in his view there was no evidence to support any other claim, he pushed for settlement based upon the defendants' "exposure on breach of contract, breach of contract warranty." The complaint remains pending against the implement dealer, Bruna Brothers.

The settlement proceeds were turned over to the Chapter 12 Trustee. Mr. Hasty's fees of $6,037.50 and expenses of $77.00 incurred in pursuing the Gehl claim were approved by the Court on December 31, 2008[20] and August 4, 2009[21] and have been disbursed by the Trustee, who now holds $76,782.50 in principal from the Gehl settlement.

### C. The judgment awarding fees and expenses to Mr. Klaassen.

After Mr. Hall terminated Mr. Klaassen's representation by letter dated August 14, 2008 and the Court approved Mr. Klaassen's withdrawal, Mr. Klaassen filed a motion for approval of his fees and expenses. Mr. Hall opposed the requested award. Trial was held on January 15, 2009 and February 26, 2009. A memorandum Opinion and Order was filed on April 24, 2009, approving the request[22] and a judgment in the amount of $38,911.50 in fees and $6,194 for expenses, with credit of $2,739 already paid, was filed on the same date.[23] Debtor filed a motion to reconsider on May 8, 2009, the eleventh day after the entry of the judgment.[24] The Court has

---

[19] Doc. 501-1, Partial transcript of December 2, 2009 proceedings, at 121.

[20] Doc. 233.

[21] Doc. 350.

[22] Doc. 302.

[23] Doc. 303.

[24] Doc. 309.

ruled that the motion, to the extent it seeks relief under Rule 59, is untimely but that it will consider the motion as one for relief under Rule 60(b). On May 21, 2009, Mr. Hall filed a notice of appeal from the Memorandum and Order.[25] That appeal was dismissed because the notice was filed after expiration of the appeal time.[26]

The Court had intended to hear the Rule 60(b) motion at trial of the matters now being decided, but decided to continue that matter until the appeals were resolved. For purposes of resolving the issues before the Court, the $42,366.50 judgment in favor of Mr. Klaassen will be considered as the amount of Mr. Klaassen's fees. If the judgment in favor of Mr. Klaassen is amended upon hearing the Rule 60(b) motion, appropriate changes will be made to this opinion and the related judgment.

At the December trial, Debtor attempted to prove that Mr. Klaassen agreed that his fees were less than the amount of the judgment, or at least that Mr. Klaassen agreed that he would take only $8,000 of his fees from the Gehl settlement funds, not withstanding the language of Class 7 of the Confirmed Plan. This issue is very prominent in Debtor's written closing argument.[27] The Court finds that Mr. Hall did not prove his contention. As to the total fees, this issue was litigated at the fee trial, and that judgment is final.[28] As to whether Mr. Klaassen's share of the Gehl settlement would be less that his total fees, all that Mr. Hall established was that during mid 2008, when the Gehl settlement was being negotiated by Mr. Hasty and Mr.

---

[25] Doc. 313.

[26] *Hall v. Klaassen*, United States District Court for the District of Kansas, case no. 09-4091-JAR.

[27] Doc. 531.

[28] Doc. 303. Debtor's rule 60(b) motion for relief from the judgment is pending.

Klaassen on Debtor's behalf was contemporaneously attempting to renegotiate Mr. Hall's liability to TeamBank, projections for the disposition of the Gehl settlement funds included an estimate of Mr. Klaassen's fees significantly less than the amount of the later judgment. These negotiations with TeamBank never finalized, so the reason for Mr. Klaassen to agree to accept less than full payment from the settlement never materialized. Mr. Klaassen testified that these estimates of reduced payment were proposed to further refinancing and that he did not agree to waive his right to payment in full from the Gehl settlement in accord with the Confirmed Plan. Mr. Hall's evidence does not cast doubt upon the truth of this testimony.

## III. ANALYSIS AND CONCLUSIONS OF LAW.

### A. The Settlement Agreement dated November 8, 2007 is enforceable.

### 1. Positions of the Parties.

In Document 360, Debtor moves to set aside the Settlement Agreement as not enforceable. First, he asserts that the Settlement Agreement was "conceived in fraud by David R. Klaassen."[29] Second, Mr. Hall contends that the requirement of Federal Rule of Bankruptcy Procedure 9019 (hereafter "Rule 9019") for notice and opportunity to be heard applies to the Settlement Agreement and because this procedure was not followed the Settlement Agreement is unenforceable.[30] Debtor's primary authority is *Sparks*.[31]

GSB contends the Settlement Agreement should not be set aside, since the Code includes no requirement for judicial approval of the Settlement Agreement and Rule 9019 should not be

---

[29] Doc. 468, Final Pretrial Order, p. 12.

[30] *Id*.

[31] *In re Sparks*, 190 B.R. 842 (Bankr. N.D. Ill. 1996).

11

construed to create such a requirement unless the Code requires notice and an opportunity to be heard for the underlying action sought to be accomplished.[32]  Mr. Klaassen agrees that the Settlement Agreement is enforceable.  He asserts that there was no fraud, that Mr. Hall executed the Settlement Agreement, that Mr. Hall has in the past relied upon the Settlement Agreement, and that Rule 9019 does not require that Settlement Agreement to be approved by the Court for it to be effective or binding between Debtor and TeamBank[33]  The Chapter 12 Trustee, Eric Rajala, contends the Settlement Agreement is unenforceable because it was not approved by the Court after notice and opportunity for hearing, as required by Rule 9019.  However, the Trustee also contends that setting aside of the Settlement Agreement is not a valid basis for vacating the order confirming the plan as amended.[34]

**2.  Debtor may not rescind the Settlement Agreement.**

This is a case of buyer's remorse.  Debtor is attempting to rescind the Settlement Agreement simply because he no longer wishes to be bound by its terms.  State law is controlling on the question of whether a debtor may unilaterally rescind a settlement agreement.[35]  The Settlement Agreement provides Kansas law controls.  "Kansas law favors compromise and settlement of disputes and, generally, in the absence of bad faith or fraud, neither party is

---

[32] Doc. 468, at pp. 12-13, citing *In re Telesphere Comm., Inc.*, 179 B.R. 544 (Bankr. N.D. Ill. 1994) and *In re Sparks*, 190 B.R. at 842.

[33] *Id.*, at pp. 13-14, citing *In re Novak*, 383 B.R. 660 (Bankr. W.D. Mich. 2008) and other cases.

[34] *Id.*, at pp. 14-15, citing *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 141 (10th Cir. 1988).

[35] *Farmers Nat'l Bank of Osborne v. Mettlen (In re Mettlen)*, 174 B.R. 823, 824 (D. Kan. 1994; *In re Cotton*, 127 B.R. 287, 289 (Bankr. M.D. Ga. 1991).

12

permitted to repudiate a settlement agreement."[36]  Such an agreement may also be rescinded if

tainted by mutual mistake.[37]  In this case, Debtor alleges fraud, but not mutual mistake, as a basis

to rescind, but the Court finds that he has not provided clear and convincing evidence of fraud,

as required under Kansas law to support rescission.

At trial, Debtor argued that the Settlement Agreement was fraudulently obtained for Mr.

Klaassen's own benefit.  He argued that a provision requiring Court approval of the agreement

was fraudulently removed from the final draft and that he, Mr. Hall, did not sign the final version

of the Settlement Agreement.  Mr. Hall testified that he wishes the Settlement Agreement to be

set aside because he wants to avoid payment of the Gehl proceeds to Mr. Klaassen.  Mr. Hall

wants most all of the proceeds to go to GSB, so he can negotiate an amended plan with lower

payments on his secured debt.  At other times, Mr. Hall has asserted that he should get all of the

Gehl proceeds.

Debtor offered no direct evidence supporting his contention that Mr. Klaassen

fraudulently obtained the Settlement Agreement for his own benefit to the detriment of his client,

Mr. Hall.  Mr. Klaassen testified that an important reason to obtain the Settlement Agreement

with TeamBank, rather than to simply incorporate the terms of an oral settlement resolving

outstanding issues into an agreed order of confirmation, was to assure that TeamBank's write off

of $82,050.54 of its claim was an absolute write off for all purposes so it would be enforceable

no matter what happened in the future. Mr. Klaassen also testified that the provision for payment

---

[36] *In re Mettlen*, 174 B.R. at 824.

[37] *Id.*

13

of Mr. Klaassen's fees from the Gehl proceeds was discussed with and approved by Mr. Hall and there had never been language the agreement providing for approval under Rule 9019.

The evidence which Mr. Hall relies upon to show fraud is found in Hall Exhibit 94,[38] which is 608 pages of documents from Mr. Klaassen's file produced to Mr. Hall by Mr. Klaassen during pretrial discovery. This production included multiple versions of the Settlement Agreement, and Mr. Hall contends that the variations between the versions evidence fraud. Further, Debtor contends he did not sign the Settlement Agreement because in the Debtor's copy of the production, the signature page which Debtor signed was not attached to the version of the Settlement Agreement which the other parties contend is the final version.

The presence of multiple copies of the agreement in documents produced, although perhaps causing confusion to Mr. Hall, is not evidence of fraud. The evidence established that there were several revisions of the agreement. The revisions were submitted by Mr. Klaassen to Bank counsel, with copies to Mr. Hall. There was no secret agreement. The last two revisions were in red line format and clean format. The discovery included copies of both formats of each draft. Mr. Klaassen testified as to the changes made in each version and the reasons therefore. The priority of the payment of Mr. Klaassen's fees remained substantially unchanged during the negotiation process. The Court, having reviewed the various drafts, finds that at no time did any of the versions provide that the final Settlement Agreement would be submitted to the Court for approval, following notice and opportunity for hearing. Therefore there is no evidence to support Mr. Hall's contention that such a provision was fraudulently removed from the final

---

[38] Debtor's exhibit 94 was admitted in part. The admitted portion includes four copies of the Settlement Agreement.

version. In addition, the Court finds that the modifications of the agreement to provide that an order to confirm the plan as amended would be filed "simultaneously" with approval of the Settlement Agreement by the parties, rather than when "reasonably possible" after such execution as in early drafts, does not evidence fraudulent intent. The change in timing of presentation of the order simply reflected the fact that the negotiation of the Settlement Agreement with TeamBank was concluded at the same time as approval of an amended plan was obtained from TeamBank, the Trustee, and counsel for Oddo & Hurley.

In addition, the Court finds that Debtor has not proven that he did not approve and sign the final Settlement Agreement. Debtor's basis for this argument is that there were several versions of the agreement in the file produced by Mr. Klaassen, that in Debtor's copy his signature page was not attached to the final version, that a fax header appeared on the top of some but not all copies of the Bank's signature pages, and that there was black line on the top of some but not all copies of the signature pages. At trial, through a comparison of Exhibit 94, Mr. Hall's copy of Mr. Klasssen's file, with the original of Mr. Klaassen's file, it was established that the executed signature pages for the final version of the document were the last two pages in Mr. Klaassen's file produced to Mr. Hall. In Exhibit 94, those pages had been reordered and appeared following other versions of the agreement. As to the fax header, Mr. Klaassen testified that when he receives signature pages by facimile, he whites out the fax header on the pages that he attaches to the final version of the document, thereby explaining why some versions of the signature page executed by the Bank has the header and others did not. From examination of the signature pages with a black line at the top, the Court finds this circumstance to be of no significance.

15

In fact, the evidence is that Mr. Hall approved and signed the final draft of the Settlement Agreement, which was also approved and signed on behalf of TeamBank. Mr. Klaassen testified that he mailed a copy of the final draft of the Settlement Agreement to Mr. Hall on November 5, 2007 and received the signature page with Mr. Hall's signature on November 8, 2007. When confronted at trial with a copy of the Settlement Agreement from GSB's achieves which had signature pages executed by Mr. Hall and by a Bank representative, Mr. Hall challenged the authenticity of the document (which had no redline strike outs) for two primary reasons, neither of which are convincing to the Court. Mr. Hall contended that the copy was not authentic because TeamBank's counsel at times during the negotiation process had been provided redline drafts of the amended agreement and because when GSB's counsel testified as a witness called by Mr. Hall she arguably used a different tone of voice from that she used when questioned by others.

The Court finds that Debtor failed to prove by clear and convincing evidence that the Settlement Agreement was fraudulently obtained. Debtor and TeamBank approved the Settlement Agreement dated November 8, 2007.

**3. The Settlement Agreement was not approved by the Court after notice and an opportunity for hearing pursuant to Rule 9019. If for this reason, Debtor-in-Possession may not be bound by the Settlement Agreement as a contract, this issue is moot because the terms of the Settlement Agreement were incorporated into the Confirmed Plan. Debtor in his individual capacity is bound by the Settlement Agreement because Rule 9019 does not apply to such an agreement.**

**a. Bankruptcy Rule 9019.**

Alternatively, Debtor argues that he is not bound by the Settlement Agreement because the procedures for court approval of the Settlement Agreement stated in Bankruptcy Rule 9019 were not followed. Bankruptcy Rule 9019(a) provides:

16

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

This subsection of Rule 9019 had its source in Section 27 of the Bankruptcy Act which provided that the "receiver or trustee may, with approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate."[39] "The purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a trustee or debtor-in-possession that affects the bankruptcy estate."[40] Court approval protects against bad deals made between a trustee and a creditor.[41] When the rule applies, the courts generally before approving a compromise consider whether it is both fair and equitable and in the best interest of the estate.[42]

The scope of the rule is not settled. It has been held the rule is simply procedural and, unlike the provisions of the Act from which it is derived, is not a substantive provision requiring court approval of compromises if such a requirement does not exist in the Code itself.[43] Some courts finds such approval permissive, not mandatory,[44] while others find that a trustee may not

---

[39] 10 *Collier on Bankruptcy* ¶9019.RH[1] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2009).

[40] *In re OptinRealBig.com, LLC*, 345 B.R. 277, 291 (Bankr. D. Colo. 2006).

[41] *Pimeo v. Turner (In re Turner)*, 274 B.R. 675, 680 (Bankr. W.D. Pa. 2002).

[42] 10 *Collier on Bankruptcy* ¶9019.02.

[43] *In re Novak*, 383 B.R. 660, 668 (Bankr. W.D. Mich. 2008); *see In re Sparks*, 190 B.R. at 844.

[44] *E.g., In re Dalen*, 259 B.R. 586, 598-99 (Bankr. W.D. Mich. 2001); *In re Novak,* 383 B.R. at 667-675.

17

enter into a binding compromise without court approval.[45]  In this circuit, there is little case law

construing Rule 9019, but the one Tenth Circuit case would support a broad reading of its

applicability.  In *Blehm Land & Cattle*,[46] relied upon by the Trustee, the Tenth Circuit stated that

under the rule "a settlement or compromise agreement between the trustee and a party must be

approved by the court, after notice and hearing, to be enforceable."[47]  Bankruptcy Judge Berger,

found the standard of Rule 9019, as well as § 363, applied to the compromise of claim which

amounted to the sale of an estate asset.[48]  It has also been held that "Compromises may be

effected separately [pursuant to the procedures of Rule 9019] during reorganization proceedings

or in the body of the reorganization plan itself." [49]  Courts disagree regarding the efficacy of

unapproved settlements.[50]

However, it is clear that Rule 9019  does not apply to compromises not involving the

estate. As stated by one commentator "where the proceeding in which a compromise is sought

---

[45] *E.g., In Signet Industries, Inc.*, 165 F.3d 28, 1998 WL 639168 (6th Cir. 1998 (unpublished)); *In re Sparks,* 190 B.R. at 842 (notice and hearing required by 11 U.S.C. § 363).

[46] *Travelers Ins. Co. v. Amer. Agcredit Corp. (In re Blehm Land & Cattle Co.)*, 859 F.2d 137 (10th Cir. 1988).

[47] *Id.*, 859 F2d at 141. The *Blehm* court nevertheless held that a negotiated agreement between the trustee and a creditor concerning adequate protection cash payments in exchange for permission to use certain property out of the ordinary course of business was not subject to Rule 9019.  It found that agreement to simply be a "vindication of a statutory right, and not a settlement or compromise in the usual sense." *Id.*, quoting *In re Bramham*, 38 B.R. 459, 466 (Bankr. D. Nev. 1984). The court noted that the since there was no dispute as to the validity of the secured creditor's underlying claim or its right to adequate protection there was no compromise or settlement for purposes of Rule 9019.

[48] *In re Donohue*, 410 B.R. 311, 314-15 (Bankr. D. Kan. 2009).

[49] *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988).

[50] *See In re Fortran Printing, Inc.*, 297 B.R. 89, 96 (Bankr. N.D. Ohio 2003).

18

does not involve the interest of the estate at large, notice need not be given."[51] *In re OptinRealBig.com*[52] provides an example of this principle. In that case a negotiated settlement agreement addressed only the relationship between the parties if the pending bankruptcy cases was dismissed. The court stated the purpose and effect of "Rule 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a trustee or debtor-in-possession that affects the bankruptcy estate"[53] and held it did not apply to an agreement to be effective only if the case was dismissed.

> **b. If Rule 9019 applied and required notice and an opportunity for hearing before the Settlement Agreement was binding upon the estate, because the Debtor-in-Possession is bound by the confirmed amended plan, the failure to seek separate Court approval of the Settlement Agreement is moot.**

The Settlement Agreement is a contract of compromise between George Hall as Debtor-in-Possession and TeamBank. It was intended as a compromise of the Bank's objections to Mr. Hall's exemptions, Mr. Hall's assertion of lien avoidance, and the valuation of the Bank's collateral. Since these matters concern the estate, it is possible that if the issue were the enforcement of the Settlement Agreement as a contract between the TeamBank and the Debtor-in-Possession, the procedures of Rule 9019 would be found applicable. As examined above, court decisions do not provide clear guidance whether the procedures of Rule 9019 apply,[54] and if they do, the consequence of noncompliance. However, the enforcement of the Settlement Agreement

---

[51] 8 Norton Bankruptcy Law & Practice ¶ 167:1 (Thompson/West 2009) .

[52] *In re OptinRealBig.com, LLC*, 345 B.R. at 277.

[53] *Id*., 345 B.R. at 291.

[54] *See In re Turner*, 274 B.R. at 679-681.

Case 06-40872   Doc# 585   Filed 04/28/10   Page 19 of 40

as a contract between the parties is not the issue in this case, so the Court does not decide the question.[55]

In this case, neither GSB nor Mr. Klaassen are seeking to enforce the Settlement Agreement. Here the effectiveness of the terms of the Settlement Agreement was accomplished through their inclusion in the plan of reorganization, not through contract law as applied to the Settlement Agreement. The Settlement Agreement in paragraph 5(d) provides:

> Simultaneously with the execution of this agreement by all the parties hereto, TeamBank, Hall, and such other persons as may be required, shall approve and upload with the Bankruptcy court an order to be entered in Bankruptcy Case No. 06-40872-12 which confirms a plan which is consistent with the provisions of this agreement and otherwise puts into effect all of the terms set forth in this agreement.

In accord with this provision, an order confirming a plan incorporating the compromise with TeamBank was uploaded and entered by the Court. As examined below, that Confirmed Plan is effective as a final order of the Court from which no appeal was taken. The Debtor and all creditors are bound by the Confirmed Plan.[56] Therefore, if the procedures of Rule 9019 were

---

[55] This Court agrees with those cases which hold that when a compromise and settlement is presented to the court in the body of the reorganization plan itself, a separate proceeding under Rule 9019 is not required. *See In re Texaco, Inc.*, 84 B.R. at 901. Compromise and settlement of objections to confirmation are the standard and favored practice in Chapter 12 cases. To impose a requirement of approval of settlements in a separate proceeding in accord with Rule 9019 would be burdensome to the courts and the parties and unjustifiably slow the confirmation process. However, if a written settlement agreement which is within those compromises governed by Rule 9019 is intended to be binding on the estate other than in the context of the proposed plan in which its terms are incorporated, prudent counsel would be well advised to seek approval of the compromise under the Rule 9019 standard during the hearing on approval of the plan. Likewise, a separate Rule 9019 proceeding might be desirable if, unlike this case, a substantial delay is expected between reaching settlement and the confirmation hearing.

[56] 11 U.S.C. § 1227(a).

applicable or the standard of Rule 9019 should have been applied to the Settlement Agreement during a confirmation hearing, the failure to follow that rule is moot.

Further, even if a separate Rule 9019 opportunity for hearing was required, in the circumstances of this case the failure to do so was harmless error. The settlement was fair and equitable and in the best interest of the estate. TeamBank had filed two secured claims, one for $231,376.55 and another for $40,673.69. The settlement reduced the claim to a fully secured claim of $190,000 to be paid over 26 years. TeamBank agreed to a carve out of its alleged right to the proceeds of the Gehl Settlement, as well as any proceeds of other prepetition claims of the Debtor against third parties, to pay Debtor's counsel's fees, an administrative expense. TeamBank's objection to Debtor's avoidance of liens impairing his exemption was withdrawn. Further, as evidenced by consent to the Amended Plan, the terms of the settlement were agreed to by the Chapter 12 Trustee, the primary secured creditor, TeamBank, and by Oddo and Hurley, the holders of approximately $605, 000 of the scheduled $700,944.14 in unsecured claims.[57] If an opportunity for a Rule 9019 hearing had been provided, it is very doubtful that any objections would have been filed or that any objections would have had merit. After all, this litigation seeking to invalidate the Settlement Agreement is brought by the Debtor-in-Possession who approved the Settlement Agreement, not by a party who would have been provided an opportunity to object.

> **c. Debtor in his individual capacity is bound by the Settlement Agreement because Rule 9019 does not apply to such an agreement.**

---

[57] See Doc. 26, p. 35, Statement of Financial Affairs, Schedule F.

The Settlement Agreement is between TeamBank and George Milam Hall, both individually and as Debtor-in-Possession in this case. The Settlement Agreement does not state that it is effective only upon approval of the Court, and the Court finds that Rule 9019 does not apply to the Agreement between George Milam Hall in his individual capacity and TeamBank.

Debtor's agreement in his individual capacity with TeamBank did not involve the interest of the estate as a whole or seek to bind the bankruptcy estate. An agreement between George Hall individually and TeamBank is clearly outside the purpose of Rule 9019. The Settlement Agreement, when viewed as a contract between George Hall individually and the Bank, is not invalid because approval was not obtained under Rule 9019.

### d. The cases on which Mr. Hall relies are distinguishable.

Mr. Hall relies primary upon *Sparks*[58] to support his position that the terms of the Settlement Agreement are not enforceable because the agreement was not approved under Rule 9019. In *Sparks*, the Chapter 11 Debtor entered into an agreement for the sale of estate real property to the LeComptes, who had been renting the property. The terms of the settlement were to be an integral part of a plan or reorganization. Just before the confirmation hearing, Sparks received what he thought was a better offer on the property and filed a modification of the plan that deleted all reference to the LeCompte settlement. The LeComptes filed a motion to enforce the settlement agreement. The court denied enforcement. It noted that the settlement involved the disposition of estate assets and its terms were to be incorporated into a plan of reorganization. Under the circumstances, both § 363, involving sale of estate property, and § 1129, concerning

---

[58] *In re Sparks*, 190 B.R. at 842.

confirmation of a plan, were substantive provisions of the Code that required a hearing and court approval.  Because the court did not approve the settlement agreement, it was not enforceable.

The Debtor reads *Sparks* too broadly.  First, in this case, unlike *Sparks*, the terms of the Settlement Agreement between TeamBank and the Debtor-in-Possession were incorporated into the amended plan which was approved by the Court on November 13, 2007.  As examined below, the confirmation is a final order that is binding upon the Debtor and all creditors.  It is because of the effect of confirmation that noncompliance with Rule 9019, even if it required a hearing, does not mean that the terms of Settlement Agreement are not enforceable.  Second, as examined above, the Settlement Agreement was between TeamBank and Mr. Hall, both in his individual capacity and as Debtor-in-Possession.  Sparks did not enter into the agreement in his individual capacity, but Mr. Hall did.  The *Sparks* opinion is not relevant to the Court's ruling that the Settlement Agreement is enforceable against Mr. Hall personally.

Although Mr. Hall asserts that *Novak*[59] supports his position, the Court finds it actually supports the positions of GSB and Mr. Klaassen.  *Novak* holds that "a trustee is not required to seek Rule 9019 approval of a settlement in order for it to be enforceable."[60]  After a careful examination of court oversight of trustees under the former Bankruptcy Act and the Code, the *Novak* court concludes that courts are not to be involved in the administrative decisions of trustees and that a trustee's decision to use Rule 9019 is discretionary.  The rule "offers [the trustee] the invaluable opportunity to procure the court's assurance that his decision to settle will not be second-guessed at some later date by a disgruntled creditor objecting to his fees or making

---

[59] *In re Novak,* 383 B.R. at 660.

[60] *Id.*, 383 B.R. at 670.

Case 06-40872    Doc# 585    Filed 04/28/10    Page 23 of 40

a claim against his bond."[61]  In other words, Rule 9019 provides a procedure for approval of settlements, but does not create a substantive requirement of court approval that does not exist in the Code itself.[62]

Likewise, *OptinRealBig.com*, also relied upon by Mr. Hall, does not support his position that the Settlement Agreement is unenforceable because Rule 9019 procedures were not followed. As discussed above, that case held that Rule 9019 did not apply to a settlement that was to take effect only if the bankruptcy case was dismissed.

### 4. Conclusion.

For the foregoing reasons the Court holds that the November 8, 2007 Settlement Agreement between TeamBank and the Debtor is a valid and enforceable contract under Kansas law.  Debtor seeks rescission on the basis of fraud, but has failed to show fraud by clear and convincing evidence.  In addition, the Settlement Agreement is not invalid or otherwise not effective because the procedures for approval under Rule 9019 were not followed.  The terms of the Settlement Agreement between TeamBank and the Debtor-in-Possession were approved by the Court in the confirmation process, and the Confirmed Plan is a final judgment that is binding upon Debtor and all creditors.  The Settlement Agreement when considered a contract between Debtor in his individual capacity and TeamBank is outside the scope of Rule 9019.

### B.  Has the Confirmed Plan been amended or is it otherwise invalid for reasons not related to the Settlement Agreement?

### 1. Positions of the parties.

---

[61] *Id.*

[62] *Id.*, 383 B.R. at 668, citing *Telesphere Communications, Inc.,* 179 B.R. 544, 551-52 (Bankr. N.D. Ill. 1994).

24

In Documents 209, 221, and 360, which generally are presented as motions to amend the Confirmed Plan, Debtor contends that the Confirmed Plan is not valid for reasons in addition to the alleged invalidity of the Settlement Agreement and his dissatisfaction with the fee award to Mr. Klaassen. In the motions, Mr. Hall suggests individual terms which should in his view be in a plan, such as GSB should receive $70,000 of the Gehl proceeds, but submits no proposed amended plan. In the Final Pretrial Order, Mr. Hall contends that proper procedures were not followed with respect to confirmation.[63] The other parties assert that the Confirmed Plan is valid and that Documents 209, 221, and 360 are procedurally and substantively invalid if considered attempts to amend the Confirmed Plan.[64] At trial, Mr. Hall presented no evidence relevant to the merits of the proposed amendment of the plan.

### 2. The Confirmed Plan is binding on Mr. Hall.

For two reasons, the Court rejects Mr. Hall's contention that the Confirmed Plan is invalid because there was no confirmation hearing held after the amended plan was prepared. First, the Amended Plan was confirmed on November 13, 2007, and the confirmation order is a final order which has not been appealed.[65] Even if the Court made an error when confirming the plan without notice and an opportunity for a second hearing or that a Rule 9019 hearing should have

---

[63] Doc. 468, p. 18.

[64] *Id.*, at pp. 18-21.

[65] Fed. R. Bankr. P. 8002 at the relevant time provided that notices of appeal shall be filed within 10 days of the entry of the order appealed from. No timely notice of appeal was filed. Pursuant to § 1230, a request to revoke a confirmed plan obtained by fraud must be filed within 180 days after the date of the entry of an order of confirmation. Debtor did not timely seek relief under this section, and none of the motions before the Court were filed within the 180 day period. Document 190 was filed September 4, 2008, Document 209 was filed on November 10, 2008, Document 221 was filed on December 1, 2008, and Document 360 was filed on August 12, 2009.

been held as condition to incorporation of the terms of the Settlement Agreement into the amended plan, the confirmation order remains enforceable. This is the teaching of the Supreme Court's recent decision in *Espinosa*.[66] In that case, the bankruptcy court confirmed a plan that provided for discharge of a student loan without making the hardship determination required by the Code. The creditor had notice of the proposed plan and the confirmation hearing, but did not object or appeal the order of confirmation. Despite the fact that the bankruptcy court committed legal error by failing to find undue hardship before confirming the plan, the Supreme Court held the order of confirmation enforceable and binding on the student loan creditor. In this case, Debtor, the only party contending that the plan is not enforceable, not only had notice of the terms of the plan, he sought the confirmation of the amended plan. The Confirmed Plan is enforceable even if the proper procedures were not followed. Debtor's attacks on the Confirmed Plan asserted in documents 190, 209, 221, and 360 are collateral attacks on a final judgment which this Court will not permit.

Second, on the merits, the Court finds that the confirmation procedure followed in this case, which is stated above, was that customarily followed in this district and was sufficient under the facts of this case. Contrary to Mr. Hall's position, the Court finds there was no requirement of a confirmation hearing applicable to the amended plan, that was accepted by the Trustee and all creditors who had objected to the March 2, 2007 plan and did not adversely affect the treatment of classes of creditors who did not affirmatively approve the changes.[67] A confirmation hearing was held as to the March plan, as required by § 1224. There were three objections, and the procedure

_____

[66] *United Student Aid Funds, Inc. v. Espinosa*, __ U.S. __, 2010 WL 1027825 (2010).

[67] *See* Doc. 534 (Trustee brief, citing doc. 57).

26

for contested matters therefore applied. The plan was not confirmed at the hearing, the parties undertook discovery and participated in mediation, which eventually lead to an agreed modification of the plan. Other than Baldwin State Bank who had previously settled its treatment under an amended plan, all parties who had objected in March approved the confirmation order.[68] The treatment of other classes was not adversely affected.

Sections 1224 and 1229(b), cited by the Debtor, did not require a hearing before confirmation of the amended plan. In accord with § 1224, a confirmation hearing was held on April 6, 2007. Section 1229, as well as Rule 3015(g) providing for notice with opportunity for hearing, address modification of a plan *after* confirmation. The November 13, 2007 order amending and confirming Debtor's March 2, 2007 plan did not amend a confirmed plan. Modification of a plan before confirmation is addressed by § 1223, but it contains no requirement for notice or hearing. There is no bankruptcy rule applicable to preconfirmation amendments in Chapter 12 cases.[69] Rule 3019, which in subsection (a) requires the court after hearing on notice to determine if the modification adversely affects the treatment of the claim of any creditor or equity holder who has not accepted the modification in writing, does not apply to Chapter 12 cases.[70]

### 3. Debtor's motions to amend the Confirmed Plan are substantively and procedurally insufficient.

---

[68] Doc. 139.

[69] 9 *Collier on Bankruptcy* ¶ 3019.RH[3]

[70] The spirit of Rule 3019 was satisfied in this case since the Court finds upon review of the Confirmed Plan that the modification did not adversely affect the treatment of parties who did not consent to the amendment. The two secured creditors reached agreement with Debtor. Since the length of the plan changed from three to five years, the interests of unsecured creditors were not adversely affected.

27

Debtor's pleadings filed as Documents 209, 221, and 360 although identified, at least in part, as motions to amend the Confirmed Plan, are not substantively or procedurally sufficient to accomplish amendment. The Code addresses the amendment of a confirmed plan in §1229. It provides in part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, on request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
>
> (b)(1) Sections 1222(a), 1222(b), and 1223(c) of this title and the requirements of section 1225(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

Evaluation of Debtor's motions to amend the Confirmed Plan for compliance with § 1229 is difficult because the three motions being considered are not limited to plan amendment. In Document 209, Debtor reargues his position that David Klaassen is not entitled to the amount of fees and expenses awarded by the Court; that the maximum amount of fees and expenses which should be paid to Mr. Klaassen out of the Gehl proceeds is approximately $8,000; states his frustration in his attempts to work with counsel for TeamBank to amend his payments; requests that the Confirmed Plan be amended so the distribution of the Gehl proceeds can be changed to

28

the following: $4,000 to Paul Hasty; $1,000 to the Chapter 12 trustee; $8,000 to David Klaassen; $70,000 to TeamBank; and that his obligation to TeamBank refinanced to reduce payments to $500 per month for 72 months and $788 per month for 288 months. In Document 221, Debtor appears to address procedural matters related to the changes sought in Document 209. The primary matters addressed by Document 360 are Debtor's allegations that the Settlement Agreement and the Confirmed Plan should be set aside for the reasons which the Court has found insufficient.

There are several reasons to hold that Debtor pleadings, if construed as motions to amend the Confirmed Plan, should be denied.[71] First, Debtor failed to comply with Rule 3015(g), which requires that the proposed modification be filed together with the request to modify. At no time has Debtor filed a document which could be considered to be "the proposed modification." Debtor's pleadings read as documents of dissatisfaction with the Confirmed Plan, rather than proposals for modifications. This case illustrates the importance of the rule that the proposed modification be filed, since without such a document it is impossible to ascertain exactly what a modified plan would provide.

Second, none of the foregoing documents, when construed as motions to amend the Confirmed Plan, comply with § 1229. Section 1229 provides that § 1222(a) applies to the plan as amended. Section 1222(a)(2) provides that the plan shall provide for the payment in full, in deferred cash payments, of all claims entitled to priority under § 507. Mr. Klaassen's fees in the

_____

[71] In addition to the deficiencies discussed below, the Court questions whether Debtor's proposed amended plan is proposed in good faith. Good faith is required by § 1229(b)(1), which incorporates the good faith standard of § 1225(a)(3). Debtor's proposed amendments are a transparent attempt to change the distribution of the Gehl proceeds, to which he previously agreed, and to avoid the payment the fees and expenses awarded to Mr. Klaassen.

amount of $46,366.50 is an administrative expense entitled to such priority, but Mr. Hall's proposed amendment reduces payments to him to $8,000.[72]

Third, as to the proposed amendment to the claim of TeamBank, the proposal fails to comply with § 1225(a)(5), as GSB has not consented to the revised treatment, and there is no showing that the proposed amendment satisfies the standards for confirmation without approval of the secured creditor.

Fourth, the proposed amendments also do not comply with § 1225(a)(6), requiring that the amended plan be feasible. Debtor offered no evidence at trial in support of this requirement.

**C. How are the proceeds of the Gehl Settlement remaining after the payment of fees to Mr. Hasty to be distributed?**

**1. Positions of the parties.**

Mr. Hall's position as to the distribution of the Gehl proceeds is not consistent, other than his insistence that Mr. Klaassen should receive at most $7,000 or perhaps $8,000. The Final Pretrial Order states the following as Debtor's position: "The Gehl proceeds is solely Debtors. GSB has a first perfected security interest in the entire Gehl Proceeds." He contends that since the Confirmed Plan in unenforceable because the Settlement Agreement is unenforceable, the Gehl money is "nondisposable discretionary income" to which he is entitled because he needs the money to repair his home and fencing because of a tornado. The Final Pretrial Order also includes the contention that Mr. Hall is entitled to a portion of the Gehl proceeds as costs and expense incurred in regard to the Gehl litigation over and above the fees paid to Paul Hasty. In Debtor's reply to the closing arguments of Mr. Klaassen and Mr. Rajala,[73] Debtor takes the

---

[72] The amount of Mr. Klaassen's fees is $42,366.50 as established by a judgment of this Court.

[73] Doc. 540.

position that the entire Gehl settlement should be turned over to him so he can file a new plan and start over.

The parties, other than Mr. Hall, contend that the distribution is governed by the priorities stated in Class 7 of the Confirmed Plan. As stated above, it provides for the distribution of any recovery in the following priority: First, to the payment of Debtor's portion of all costs and expenses specifically incurred with regard to enforcing and/or prosecuting such claim; second to the Debtor with regard to any portion that is lawfully exempt and unencumbered; third to the payment of any then fees and expenses owed to David R. Klaassen as an unsecured administrative claim under class 2 of the plan; and fourth to the payment of any unpaid secured claims of TeamBank "which are secured by a duly perfected lien in or on such recovery."[74] Mr. Klaassen contends he is entitled to payment of his $42,366.50 judgment as a third priority claim and that he never agreed with Mr. Hall that his fees would be a lesser amount or that the third priority payment would be a lesser amount. GSB and the Trustee do not oppose the payment of Mr. Klaassen's fees as the third priority, but they disagree as to GSB' interest in the remainder of the Gehl settlement. GSB contends it is entitled to the entire reminder as a secured creditor holding a perfected security interest in the funds. The Trustee contends GSB's interest is limited to $7,000, the value of the skid loader as stated in the Confirmed Plan. The Trustee relies upon various provisions of Article 9 of the Uniform Commercial Code, which will be examined below.

**2. Analysis and conclusions of law.**

    **a. The priorities of Class 7 of the Confirmed Plan determine the distribution.**

---

[74] Doc. 139, p. 26.

Class 7 of the Confirmed Plan provides as follows for the first five priorities for distribution of the recovery on "all claims in favor of the Debtor against third parties which arose prior to the commencement of the" [75]case, including the Gehl settlement proceeds. In general terms, they are: (1) To the payment of Debtor's portion of the costs and expenses incurred in prosecuting the claim; (2) to the Debtor, to the extent exempt and unencumbered; (3) to the payment of fees and expenses owed to Mr. Klaassen; (4) to unpaid secured claim of TeamBank; and (5) to unpaid unsecured administrative claims included in class 2 of the plan, not paid under priority three.

As stated above, the Court has found that the Confirmed Plan is res judicata and binding upon the Debtor and all creditors. Therefore, contrary to Mr. Hall's contentions, the proceeds of the Gehl Settlement are to be distributed in accord with Class 7 of the Confirmed Plan. Although in the Pretrial Order Mr. Hall contended he was entitled to payment for costs incurred in the Gehl recovery, no evidence was presented at trial as to the factual basis for this position or the amount claimed. The Court finds that all of the priority one expenses have been paid from the Gehl Settlement. It is also undisputed that Debtor is not owed any portion under priority two.

Mr. Hall contends that the amount to be paid Mr. Klaassen under priority three is limited to $7,000 or $8,000, while Mr. Klaassen, GSB, and the Trustee all agree that Mr. Klaassen's priority three claim is for the amount of the judgment for fees and expenses in the amount of $42,366.50. As stated in the findings of fact, the Court finds that Mr. Hall did not prove at trial that Mr. Klaassen agreed to limit his fees and costs or his payment under priority three to $7,000,

---

[75] Doc. 139, p. 26, incorporating the definition in Doc. 57, Debtor's Chapter 12 Plan of Reorganization Dated March 2, 2007, Exh. A., Liquidation Analysis, p. 12.

32

$8,000, or some other amount other than the judgment.  Finally, there is no basis to distribute any of the proceeds to Mr. Hall under the fourth priority, as GSB has not agreed to such distribution as provided in the Confirmed Plan.

> **b.  Because GSB has a perfected security interest in the proceeds remaining after payment of Mr. Klaassen's fees, no portion of the Gehl proceeds should be retained by the Trustee.**

The remaining issue as to the distribution of the Gehl settlement is the Trustee's contention that GSB's recovery is limited to its perfected security interest, in an amount less than the remainder after payment of the higher classes.  It is true that the Confirmed Plan limits TeamBank's interest to its security interest as contended by the Trustee.  The full definition of the fourth priority, with emphasis supplied by the Court, is as follows:

> FOURTH to the payment of any then unpaid Secured Claims in favor of TeamBank, N.A., included in Class 6 of this Plan which are **secured by a duly perfected lien in or upon such recovery which was perfected prior to the filing of this bankruptcy case** and not otherwise avoidable by the Debtor, the Trustee, or any other Creditor or party in interest in this bankruptcy case, until such Claims are paid in full: PROVIDED THAT without the need for any amendment to this Plan, to the extent that TeamBank, N.A., and the Debtor hereafter agree in writing at any time or from time to time, any amount or portion thereof otherwise payable to TeamBank, N.A. under this FOURTH PRIORITY may be released by TeamBank, N.A., to the Debtor to be used for any of the following: (i) The maintenance or support of the Debtor or a dependent of the Debtor; and/or, (ii)The payment of any expenditures necessary for the continuation, preservation, and operation of the Debtor's businesses, or anyone or more of them;

The question therefore is the extent of the bank's perfected lien.  GSB contends it is entitled to remaining $34,416, as proceeds of its prepetition perfected security interest in the skid loader and its proceeds, to apply to its secured claim.  The Trustee contends that GSB's interest excludes that portion of the settlement attributable to settlement of Debtor's commercial tort claims and in any

33

event the lien should be limited to $6,000, the "as is value" of the skid loader as stated in the

Confirmed Plan.  The Court must therefore decide the extent of GSB's lien in the remaining Gehl

settlement proceeds and the value of the skid loader for purposes of the limitation on GSB's

proceed claim.

There is no dispute that prepetition TeamBank had a perfected security interest in

Debtor's equipment, including the Gehl skid loader[76] and the proceeds of that collateral.  Article 9

of the UCC defines proceeds as follows:

> "Proceeds" except as used in K.S.A. 84-9-609(b), and amendments
> thereto means the following property:
> (A) Whatever is acquired upon the sale, lease, license, exchange, or
> other disposition of collateral;
> (B) whatever is collected on, or distributed on account of,
> collateral;
> (C) rights arising out of collateral;
> (D) to the extent of the value of collateral, claims arising out of the
> loss, nonconformity, or interference with the use of, defects or
> infringement of rights in, or damage to, the collateral; or
> (E) to the extent of the value of collateral and to the extent payable
> to the debtor or the secured party, insurance payable by reason of
> the loss or nonconformity of, defects or infringement of rights in, or
> damage to, the collateral.[77]

The Gehl settlement funds were paid for release of the allegations of liability in connection with

the defendant's sale of the skid loader to Debtor and the return of the skid loader.  Thus the

payment is at least in part, proceeds of the bank's security interest in the loader as "whatever is

acquired upon the disposition" of the Gehl skid loader, "whatever is collected on ... account of"

the Gehl skid loader, "rights arising out of " the Gehl skid loader, and/or "claims arising out of

---

[76] GSB also asserts that it has a perfected security interest in general intangibles and proceeds
thereof.  Because the Court can determine GSB's entitlement to the proceeds remaining after payment of
lower priority claimants, the Court does not consider this interest.

[77] K.S.A. 2009 Supp. 84-9-102(a)(64).

34

defects in the collateral," pursuant to subsections (A), (B), (C), and/or (D) of the foregoing definition.

The Trustee contends that a portion of the settlement funds were not proceeds of the Gehl loader but proceeds of commercial tort claims, in which TeamBank did not have a perpetition perfected security interest. Article 9 defines a commercial tort claims as follows:

> "Commercial tort claim" means a claim arising in tort with respect to which:
> (A) The claimant is an organization; or
> (B) the claimant is an individual and the claim:
> (i) arose in the course of the claimant's business or profession; and
> (ii) does not include damages arising out of personal injury to or the death of an individual.[78]

Unlike security interests in equipment, general intangibles, and most other categories of personal property, which may be created and perfected by using the general description, such as "equipment" or "general intangibles" in the security agreement and financing statement, a description only by type of collateral defined in the uniform commercial code is an insufficient description of a commercial tort claim.[79] Therefore a security interest in a commercial tort claim can only be created and perfected by specifically identifying it in the security agreement and financing statement. In this case, TeamBank did not specifically describe in either its security agreement or financing statement a tort claim arising out of the sale of the Gehl skid loader. Therefore to the extent that the Gehl settlement proceeds were for release for liability for the tort claims alleged in the Gehl petition, these funds are not included in the funds to be paid to the GSB under Class 7 of the Confirmed Plan.

---

[78] K.S.A. 2009 Supp. 84-9-102(a)(13).

[79] K.S.A. 2009 Supp. 84-9-108(e)(1).

35

Difficulty in separating the portion of the Gehl settlement which are proceeds of the loader (contract claims) from the portion which are in compensation for commercial tort claims arises because the release executed by Gehl when settling the lawsuit did not allocate the payments between the claims made. In addition, the evidence in this regard is sparse. The petition was drafted by Mr. Hall, who is not an attorney, and prays for identical damages under each count, as follows: $25,200 for thee years of principal and interest on Debtor's farm loan with TeamBank; at least $50,000 for loss of use of the loader; $60,000 cost of the loader; $2000 for each violation of the Kansas Consumer Protection Act; and other damages in excess of $75,000.[80] Mr. Hasty, who was retained by Mr. Hall as his counsel on the Gehl litigation, testified that in his opinion the only counts in the law suit which had value were the breach of contract and breach of warranty claims. In other words, Mr. Hasty understood that no significant amount was being paid to settle the negligent misrepresentation; equitable estoppel, promissory estoppel, forbearance, and waiver; tortious interference with contract; willful misrepresentation; fraud; and Kansas Consumer Protection Act claims. The Court finds Mr. Hasty's testimony credible.

Under Kansas law, the buyer's basic damages for breach of warranty is the difference in value of the goods accepted and the value they would have had if they had been as warranted.[81] Incidental and consequential damages may also be recovered.[82] Consequential damages include lost profits and injury to property proximately resulting from any breach of warranty.[83] The Court

---

[80] Trustee Exh. A.

[81] K.S.A. 84-2-714(2).

[82] K.S.A. 84-2-714(3); K.S.A. 84-2-715.

[83] K.S.A. 84-2-715(2).

finds that the claims for $60,000 as value of the loader and $50,000 for loss of use of the loader are damages which are recoverable under a breach of warranty cause of action. It is possible that some portion of the $25,200 principle and interest payments and the un-itemized $75,000 in additional damages could be recovered as either incidental or consequential damages.

GSB asserts that it is entitled to $34,416, of the Gehl settlement after the payment of $6,114.50 to Mr. Hasty and $42,366.50 to Mr. Klaassen. Assuming for purposes of argument, that a portion of the settlement was attributable to commercial tort claims, based upon Mr. Hasty's testimony and the damage claims in the state court petition, the Court concludes that the commercial tort claim amount was less than that paid to claimants of higher priority than GSB. Stated differently, the portion of the Gehl settlement amount attributable to the contract claims exceeded $34,416, the amount claimed by GSB. This amount, in which GSB has a perfected security interest, was commingled with the proceeds, if any, of the commercial tort claims in which it did not have a perfected security interest. Article 9 provides that proceeds that are commingled with other proceeds are identifiable to the extent the secured party identifies them using equitable principles permitted under other law.[84] The official UCC comment identifies the lowest intermediate balance rule as stated in the Restatement (Second) of Trusts, section 202, as such an equitable principle.[85] Under this method, when the proceeds of collateral can be traced into a commingled fund they are presumed to remain identifiable and the security interest in them

---

[84] K.S.A. 2009 Supp. 84-9-315(b).

[85] K.S.A. 2009 Supp. 84-9-315, Official Comment, ¶ 3.

continues, as other withdrawals are made.[86]  Therefore the $34,416 remaining after the payment of

the higher priority claims of Mr. Hasty and Mr. Klaassen are traceable as proceeds of the Gehl

skid loader in which GSB has a perfected security interest.

The next question is whether the entire $34,416 remaining after payment of the higher

priority claims, constitutes proceeds of the banks' security interest in the Gehl skid loader.

Although as argued by the bank, several of the subsections of the UCC definition of proceeds

appear to fit these circumstance, the most obviously applicable is subsection (D), which defines

proceeds to include "to the extent of the value of collateral, claims arising out of the loss,

nonconformity, or interference with the use of, defects or infringement of rights in, or damage to,

the collateral."[87]  This subsection has been construed to mean that claims for property damage to

collateral are proceeds of the collateral.[88]   "The usual proceeds of collateral are money obtained

from selling it.  By a modest extension, as we have just seen, they are money obtained in

compensation for a diminution in value of the collateral."[89]  "Revised Article 9 clearly expands

the concept of 'proceeds' to cover" awards which restore the original value of the collateral, a

"type of 'substitution' for the original collateral."[90]

---

[86] *See Quinn v. Montrose State Bank (In re Intermountain Porta Storage, Inc.)*, 74 B.R. 1011, 1016 (D. Colo. 1987).

[87] K.S.A. 2009 Supp. 84-9-102(a)(64)(D).

[88] *Helms v. Certified Packaging Corp.*, 551 F.3d 675, 677-78 (7th Cir. 2008).

[89] *Id.*, 551 F.3d at 678.

[90]  Barkley Clark and Barbara Clark, Clarks' Secured Transactions Monthly (A.S. Pratt & Sons, April 2009).

38

TeamBank and the Trustee disagree on application of the value limitation in subsection (D) of the definition of proceeds. The bank asserts that the appropriate value is the cost of the collateral, which Mr. Hall testified was between $55,000 and $60,000. Trustee argues that the value is only $6,000, the "as is value" stated in Debtor's schedules. The Court finds that appropriate value is the purchase price. The definition of proceeds in (E) includes awards which compensate for diminution of value. The limitation of the recovery must therefore be the original, un-diminished value. To limit the recovery to the diminished value would defeat the purpose of the definition.

### 3. Conclusion.

For the foregoing reasons, the Court holds that the $76,782.50 funds remaining from the Gehl settlement now held by the Trustee shall be distributed as follows: $42,366.50 to Mr. Klaassen in satisfaction of the attorneys fees and costs judgment; and $34,416 to Great Southern Bank, as successor to TeamBank, in partial satisfaction of its secured claim.

## IV. CONCLUSIONS AS TO RELIEF SOUGHT BY DEBTOR.

For the foregoing reasons, the relief sought by Debtor in the pleadings filed as Documents 190, 209, 221, and 360 is denied. The Settlement Agreement dated November 8, 2007 is a contract binding upon Debtor in his individual capacity and, as to the Debtor-in-Possession, it is binding to the extent its terms are incorporated into the Confirmed Plan. Debtor's Chapter 12 plan as amended, the Confirmed plan, Document 139, is binding upon the Debtor and all creditors. None of Debtor's motions purporting to amend that Confirmed Plan are procedurally or substantively sufficient to be considered motions to amend the Confirmed Plan. The proceeds of the Gehl settlement held by the Trustee are to be distributed as follows: $42,366.50 to Mr.

39

Klaassen in payment of his administrative claim for fees and expenses; and the remainder of $34,416 to Great Southern Bank in partial satisfaction of its secured claim.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**###**